DECISION
This matter is before the Court on appeal from a judgment of possession entered by the District Court, after trial therein under the Residential Landlord and Tenant Act, G.L. § 34-18-1 et. seq. Plaintiffs James C. Halpin and Bentley Ventures, LLC (collectively "Plaintiffs" or "Landlords") brought suit against Defendants William and Bryan Henderson[1]
(collectively "Defendants" or "Tenants"), by way of a complaint filed in the District Court on December 15, 2009. Plaintiffs sought a judgment of possession for property located at 4 Cullen Avenue, Lincoln, Rhode Island, as well as $17,600 for rental payments in arrears pursuant to a written lease agreement, executed by Plaintiff Halpin and the Defendants. A trial was conducted in the District Court on or about March 30, 2010, and a judgment of possession was entered on April 6, 2010, in favor of Plaintiffs.
In accordance with the accepted procedure outlined in G.L. 1956 § 9-12-10.1, the Defendant tenants, Bryan and William Henderson, sought an appeal and are entitled to a trial denovo on Plaintiffs' claim for possession of property and rental arrearage *Page 2 
payments. Such a trial was conducted in this Court on May 4, 2010 and May 6, 2010. This dispute is governed by the Residential Landlord and Tenant Act, § 34-18-1 et seq.
 I Facts and Travel
Plaintiff James Halpin first met the Defendants through a mutual friend in New York. Based on this referral, Plaintiff hired the Henderson brothers to provide construction services to his home in West Hampton Beach, New York. At the conclusion of this project, Plaintiff spoke with the Defendants about the possibility of purchasing real estate in Rhode Island. Plaintiff intended to purchase property for investment purposes, but knowing the Hendersons had ties to Rhode Island, Plaintiff discussed hiring them to perform renovations as a "help" to them.
In February of 2008, Mr. Halpin purchased property at 4 Cullen Avenue, in Lincoln, Rhode Island. The total purchase price was $200,000; Mr. Halpin made a $50,000 down payment, and secured the remaining $150,000 by mortgage. On March 1, 2008, Mr. Halpin and the Hendersons entered into a written residential tenancy agreement ("lease agreement") for the Lincoln property. The lease agreement was for a term of one year, to commence on March 1, 2008, with rental payments set at $750.00 per month.
At the same time, Mr. Halpin and the Hendersons allegedly entered into an oral agreement for renovations to be performed to the Lincoln property. The details of the work to be performed were not established by the evidence in this case. The renovation was to be completed by May 1, 2008, and the Hendersons would each be paid $3000 per month. Additionally, during that two-month period, the Hendersons were to reside at the *Page 3 
Lincoln property. At trial, Mr. Halpin testified that the Hendersons presented an itemized renovation budget totaling $58,000, but after making several concessions, the budget was verbally lowered to $50,000. Mr. Halpin's understanding was that once renovations were completed, the property would either be sold for profit, or the Hendersons would continue living there and assume responsibility for the costs of carrying the property, including payment of the monthly mortgage obligations. However, aside from the lease agreement, nothing was memorialized in writing.
On or about March 17, 2008, Mr. Halpin filed Articles of Organization with the Secretary of the State of Rhode Island, to create Bentley Ventures, a limited liability corporation. Mr. Halpin testified at trial that the purpose of creating Bentley Ventures, LLC was to protect his personal assets from any liability issues that may arise. Mr. Halpin attempted to transfer title of the Cullen Avenue property by quit claim deed to Bentley Ventures, LLC. However, the attempted transfer of title occurred on March 13, 2008 — four days prior to the formation of Bentley Ventures, LLC, and was thus unsuccessful.
The Hendersons testified at trial that shortly after its formation, they were each to be granted a .01% share of Bentley Ventures, LLC. According to William Henderson, the minority non-voting membership to be granted to each brother was in consideration of the renovation work performed to the property, of which a substantial portion remained unpaid at the time of formation of the LLC. However, there is no written record of any such agreement, and Mr. Halpin testified that no such agreement was made. Furthermore, according to Halpin, he was the sole member of Bentley Ventures, and the *Page 4 
only person who made any contribution to its capital. The records of the LLC filed with the Secretary of State do not reflect either Henderson as a member of the LLC.
Renovations to the Lincoln property were not completed by the May 1, 2008 deadline. In fact, according to their testimony at trial, the Hendersons still continue to work to complete renovations to the Lincoln property. As evidenced by Exhibit 15 (a spreadsheet documenting renovation expenses), at the very least, Bentley Ventures funded renovations through September 30, 2008.
On or about September 1, 2008, Mr. Halpin prepared a new proposed lease agreement and sent it to the Hendersons for execution. Under the new agreement, rent was increased to $1171 per month, designed to reflect Halpin's costs related to mortgage payments, taxes, and other carrying fees. However, the Hendersons never signed or returned the new proposed lease, which was to be for the period of one year commencing on October 15, 2008.
Although the Hendersons have lived in the Lincoln Property continuously since March 1, 2008, no rent has never been paid. On May 11, 2009, approximately fourteen months into the tenancy, Mr. Halpin prepared a letter to notify the Hendersons of this arrearage. Although presumably no action was taken pursuant to the May 11, 2009 notice, it was not until four months later that Mr. Halpin followed up with another notice, this time through his attorney Tracy Waugh. On November 3, 2009, Ms. Waugh mailed two separate notices to each of the Hendersons. The first was a notice of non-payment of rent, stating that an action for eviction may be instituted against them, and the second was a notice of termination of tenancy, ordering the Hendersons to vacate the premises within thirty days. After receiving said notice, the Hendersons did not vacate the premises, nor *Page 5 
did they make payment of any current or past rent arrearage. Plaintiff consequently brought an action for possession and rental arrearage against Defendants in District Court on December 15, 2009.
 III Analysis
It is undisputed that the March 1, 2008 rental agreement is facially valid. It was signed by all necessary parties: James Halpin, as landlord, and William and Bryan Henderson, as tenants. At trial, both Plaintiff and Defendants identified the copy of the rental agreement admitted into evidence as a fair and accurate depiction of the original document. Furthermore, its provisions are clear — the tenancy was for a term of one year, beginning on March 1, 2008, and rent was set at $750 per month, to be paid by the first day of each month. It is further undisputed that neither William Henderson nor Bryan Henderson has paid any rent throughout the duration of the tenancy. However, at trial the Hendersons argued that despite the written rental agreement, they made an oral agreement with Mr. Halpin which allowed them to live in the Lincoln property rent-free, during the course of the renovations.[2]
 A March 1, 2008 Rental Agreement
In the absence of a controlling statute, the validity and construction of a tenancy agreement "are governed by substantive rules of contract law." Hart v. Vermont Inv.Ltd. *Page 6 Partnership, 667 A.2d 578 (D.C.App. 1995). "A contract modification may be written, oral, or implied from the actions of the parties." Fondedile, S.A. v. C.E. Maguire, Inc.,610 A.2d 87, 92 (R.I. 1992) (internal quotations omitted). "The party alleging the new contract bears the burden of proving the existence of the modification. Specifically, the party alleging the modification must demonstrate that the parties have both a subjective and objective intent to be bound by the contract's new terms." Id. Furthermore, "[w]hen a modification is made in contravention of an express written provision of an underlying contract, the party claiming the oral modification must show that the parties waived their contractual rights with respect to the express condition in the contract." Id.
The Hendersons are essentially arguing that subsequent to signing the rental agreement, James Halpin orally agreed to allow them to live in the Lincoln property rent-free. As established above, the party alleging the oral modification bears the burden of proving its existence. Furthermore, when such a modification is in direct contravention of an express term of the written agreement, the moving party must demonstrate that all parties had both a subjective and objective intent to be bound by the oral modification. Section 34-18-11(13) defines rent as "the payment or consideration that a tenant pays to a landlord for the use of the premises, whether money, services, property, or produce of the land." As such, it would have been possible for the parties to agree that a tenant's services for renovation work constituted a portion of the monthly rental consideration. However, in the case at bar, this would require the Plaintiff to waive his contractual right to monetary rental payments. Given the evidence of a separate oral contract for the renovation work, and testimony at trial from both Mr. Halpin and the Defendants that they were to be paid $3,000 each, per month, on account of such services, it seems *Page 7 
unlikely that Plaintiff would additionally agree to waive his rights to monetary rental payments in light of the failure of the rental agreement to include such services as part of the stipulated rent. As such, this Court finds Defendants have failed to meet their burden of proof with respect to the alleged oral modification, and are required to pay rent pursuant to the March 1, 2008 lease.
 B October 15, 2008 Rental Agreement
On or about September 1, 2008, James Halpin mailed a revised rental agreement to the Hendersons at the Lincoln, Rhode Island address. The new agreement was for a term of one year, to take effect on October 15, 2008. The terms remained substantially the same as the lease executed on March 1, 2008, however, the rent was increased from $750.00 per month to $1171.00 per month. At trial, Mr. Halpin testified that the rent increase was intended to reflect his costs related to his monthly mortgage payment, taxes, and other carrying fees. Although Mr. Halpin testified that he mailed the new rental agreement to the Hendersons, it was never executed or returned by them.
Section 34-18-16.1 of the Residential Landlord and Tenant Act provides that a landlord may increase the rent for a residential tenancy as long as notice is given thirty days prior to the effective date. "Notice" is deemed given if the landlord takes "steps reasonably calculated to inform the other in ordinary course whether or not the other actually comes to know of it." Sec. 34-18-14(b). In the case at bar, James Halpin testified at trial that he mailed the new tenancy agreement to the Hendersons at the Lincoln, Rhode Island address. This Court finds his testimony credible, and as such, finds that Plaintiff satisfied the notice requirement of § 34-18-16.1 with respect to the *Page 8 
rent increase. Furthermore, although the Hendersons failed to execute the new proposed lease, execution is not required under § 34-18-16.1. However, they did remain in possession of the property at issue, which constitutes constructive acceptance of the rent increase.
 C Compensation Owed for Renovation Work
Defendants offered testimony at trial that they have not been fully compensated for the renovation work they performed to the Lincoln property. This Court assumes that Defendants made this argument in part to have the rental arrearage offset by the money alleged to be owed to them for renovation work. Although this Court makes no determination as to whether money is in fact owed under the oral agreement for renovation work, it is worth noting that the residential tenancy agreement and the oral agreement for renovation work are two separate contracts. As such, this Court cannot consider money owed to Defendants pursuant to one contract, as an offset to money Defendants may owe on another. There has been no counterclaim brought by which the Defendants assert a claim related to the construction arrearage. And as stated earlier, if the parties intended the services rendered by Tenants to constitute part of the stipulated rent, the written lease agreement does not contain any such provision.
 D Calculation of Rental Payments in Arrears
This Court hereby finds Defendants responsible for $29,420 in rental payments in arrears. Prior to the rent increase, Defendants lived at the Lincoln property from March 2008, through October of 2008. Although Mr. Halpin intended for the rental increase to *Page 9 
take affect on October 15, 2008, because the lease began on the first of the following month, and operated in one month intervals, the rent increase could only take affect on the first of the following month. Therefore, this Court finds that the rental increase took effect on November 1, 2008. As such, Defendants are responsible for eight months of rent at $750.00 per month, to cover the period from March 1, 2008, through the end of October, 2008, which totals $6000.00. Defendants are further responsible for twenty months of rent at $1,171.00, for the period beginning November 1, 2008, through the end of June, 2010, which totals $23,420.00. As such, Defendants owe a total of $29,420.00 in back rental payments.
 III Conclusion
As was the result in the District Court, this Court hereby finds in favor of Plaintiffs for possession of the property located at 4 Cullen Avenue, Lincoln, Rhode Island, and additionally grants Plaintiffs' request for rental payments in arrears totaling $29,420. Judgment shall enter in accordance with this decision.
[1] Although the complaint filed with the District Court reads "Brian Henderson," rather than "Bryan Henderson," Defendants clarified at trial that the latter spelling is correct. Therefore, this Court will use the correct spelling throughout this opinion, despite the clerical error contained in the complaint.
[2] In the alternative, the Hendersons argued that as they were each granted a .01% interest in Bentley Ventures, LLC, and the Lincoln property was owned by Bentley Ventures, LLC, as part-owners they are not obligated to pay rent. However, as noted in Section Isupra, there is no record of either William Henderson or Bryan Henderson being granted a .01% membership share in Bentley Ventures, LLC. However, even assuming they were granted a minority interest in Bentley Ventures, LLC, such partial ownership would not permit the Hendersons to reside in the property rent free. As such, this argument fails and the Court will not address it in full.